UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


JAMES P. WEIGLE,

          Plaintiff,

v.                                  Civil Action No. 2:14-cv-15087

R.L. PIFER, individually and
in his capacity as an officer
with the City of Vienna Police Department, and
BRIAN INGRAHAM, individually and
in his capacity as an officer
with the City of Vienna Police Department, and
CITY OF VIENNA POLICE DEPARTMENT, a political
subdivision of the State of West Virginia, and
the CITY OF VIENNA, a political
subdivision in the State of West Virginia

          Defendants.

MEMORANDUM OPINION AND ORDER


          Pending is the defendants' motion to exclude the

expert opinion testimony of William T. Gaut, filed January 16,

2015.  For the following reasons the motion is granted in part,

denied in part.[1]


Background


          Plaintiff James P. Weigle ("Weigle") is a West

Virginia citizen residing in Parkersburg, West Virginia.  The

---

[1] The defendants also move, in the alternate, for additional time
to "serve rebuttal expert disclosure."  The partial denial of
the defendants' motion to exclude creates good cause for this
extension, which is hereby granted.

City of Vienna is a municipality geographically adjacent to
Parkersburg.  The City of Vienna Police Department is an
instrumentality of the municipality.  Both the city and its
police department, as well as individual officers R.L. Pifer
("Pifer") and Brian Ingraham ("Ingraham") are named defendants
in this action.

The following allegations are taken from the
complaint.  On the morning of April 21, 2012, sometime between 8
and 9 A.M., Weigle was driving southbound through Vienna on
Grand Central Avenue.  Pl. Compl. ¶ 12.  At that time, Pifer and
Ingraham were engaged in traffic control at the intersection of
Grand Central Avenue and 34th Street.  Id. ¶¶ 9-10.  The two
officers were blocking the flow of traffic on Grand Central
Avenue in order to allow the safe passage of pedestrians
involved in a street race proceeding down 34th Street.  Id.
Weigle, who was driving along Grand Central Avenue toward 34th
street, became stuck in the stalled traffic, and responded by
honking his horn.  Id. ¶ 13.  Subsequently, Pifer approached
Weigle and instructed him to pull off to the side of the road.
Id.  Weigle did so, and then got out of his vehicle.  Id. ¶ 14,
¶ 16.  Pifer asked Weigle to produce his driver's license, and
Weigle complied with that request.  Id. ¶ 15.  Weigle then
"turned toward his vehicle to get his registration and insurance

information," a move he alleges was made in response to Pifer's request that he produce those documents.  <u>Id.</u>

In response to this movement and "without provocation," Pifer "slammed [Weigle]'s car door closed" and "forcibly gripped [Weigle]'s left arm.  <u>Id.</u> ¶ 16.  Pifer proceeded to "slam[] [Weigle] into and over the hood of a nearby [police] cruiser" and "[threw] his right elbow into the back of [Weigle]'s head and neck" thereby "forcing the full weight of his six foot six, three-hundred fifty pound frame against [Weigle]."  <u>Id.</u> ¶ 18.  At this point, Ingraham entered the scene and "attempted to wrench [Weigle]'s right arm from under his abdomen to pull over his head."  <u>Id.</u> ¶ 19.

Weigle informed the two officers that he had "previously had abdominal surgery" and that the position they had put him in was causing him severe pain.  <u>Id.</u> ¶ 20.  Ingraham responded by threatening Weigle with pepper spray.  <u>Id.</u> ¶ 21.  At this point, a taser was used on Weigle, causing him to void his bowels.  <u>Id.</u>  Weigle was then taken to the Vienna Police Department where he was charged with obstruction for refusing to provide his driver's license.  <u>Id.</u> ¶ 22.  He was released from custody the same day, and was treated at a hospital emergency room for "abdominal tenderness, cervical sprain, lower back sprain, and a sprain to his right shoulder."  <u>Id.</u> ¶ 25.  Weigle

3

also suffered "damage to his esophagus" and "damage to his
bowels as a result of the crushing force applied by" the
officers.  Id. ¶ 26-27.

About two months after the incident, on June 9, 2012,
Pifer followed Weigle home in his police cruiser.  Id. ¶¶ 28-29.
Pifer was not conducting police business, did not have a
warrant, and Weigle was not issued a citation or charged with a
crime as a result of Pifer's visit.  Id. ¶ 29.  Instead, Pifer
"verbally assaulted" Weigle in an attempt to "harass,
intimidate, and frighten" him.  Id. ¶¶ 28-29.  The content of
the verbal assault is not specified in the complaint.

Approximately two years later, on April 17, 2014,
Weigle was found not guilty of the criminal charges stemming
from the altercation on Grand Central Avenue.  Id. ¶ 30.

Weigle instituted this action on April 21, 2014.  His
complaint raises a number of state law claims, as well as
several constitutional claims made pursuant to 42 U.S.C § 1983.
Three of the counts of the complaint are of particular note for
purposes of the motion to exclude.  Counts Eight and Nine
outline the various Section 1983 claims raised against the
individual defendants.  The primary thrust of those two counts
is the general allegation that Pifer and Ingraham used

4

"excessive force against [Weigle] during his arrest" in violation of the Fourth and Fourteenth Amendments.  Id. ¶ 77, ¶ 92, ¶ 93.  Count Eight also specifically alleges that neither officer had a warrant or sufficient probable cause  for initiating an arrest, and further that "[the officers] did not have any legal cause or excuse to seize the person of [Weigle]." Id. ¶ 82.  Both counts contain the allegation that Weigle suffered physical, emotional, and economic injuries as a result of the unlawful arrest, the officer's use of excessive force during that arrest, and "the malicious prosecution of baseless criminal charges."  Id. ¶¶ 87, 96.  Count Ten focuses on the institutional defendants, and contains allegations that both the city and the police department committed "constitutional violations" when they "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons around the City of Vienna."  Id. ¶ 100.

In order to support and develop his Section 1983 claims, Weigle has retained William T. Gaut ("Gaut"), an "expert in the field of criminal justice, particularly police practice and procedures and the use of excessive force."  See Pl. Rule 26(a)(2) Expert Disclosures at * 1.[2]  Gaut, who has a PhD in criminal justice from Northcentral University, an online

_____
[2] Attached as "Exhibit A" to Def. Mot. to Exclude Expert Testimony (ECF 22-1).

education facility, is a former homicide detective who spent thirty years working for the Birmingham, Alabama Police Department. Id. at * 15-16.  He was a member of a committee tasked by the governor of Alabama to "formulate the minimum standards of training for all Alabama police officers", and "regularly serves" as an instructor at the Birmingham Police Academy.  Id. at * 4, see also * 15-16.  He has been retained as a consultant in nearly a hundred cases since 2009, and has on numerous occasions testified as an expert witness "in the discipline of police practices and procedures" when those cases have proceeded to trial.  Id. at * 2, see also * 19-20.

In his expert report, Gaut identified four opinions he has formed after a review of materials made available to him by the plaintiff:

1. Acting under color of office, Pifer violated Weigle's civil rights by falsely arresting him for a crime he did not commit.

2. The force used by Pifer to arrest Weigle was objectively unreasonable and excessive.

3. Pifer committed an unethical, and potentially criminal, act of witness intimidation against Weigle, in violation of generally accepted law enforcement standards.

4. The City of Vienna, West Virginia, through the Vienna Police Department, failed to properly train and supervise Pifer.

Id. at * 6.  The report also outlines the bases on which Gaut relied to reach these opinions.  Id. at * 7-13.

The defendants' motion contends that Dr. Gaut should be prohibited from offering his opinions on these four issues because they consist of "nothing more than legal opinions that invade the role of the Court and will not be helpful to the jury."  Def. Mot. to Exclude Expert Testimony at * 3.

## Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Fed. R. Evid. 702.  The rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Id.

A witness qualified as an expert has wide latitude to testify on matters within the scope of his expertise. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). The primary limitation on the scope of an expert's testimony is helpfulness: testimony that is helpful to the jury may be admissible, while testimony that is not helpful can be excluded. See Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993)("The boundary between [admissible and inadmissible expert testimony] is defined by helpfulness."). The rules also expressly provide that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

On at least two occasions, our Court of Appeals has held that "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." United States v. McIver, 470 F.3d 550, 562 (4th Cir. 2006), United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002). McIver and Barile stand for the proposition that Rules 702 and 704, working in conjunction, prohibit an expert from offering testimony consisting of nothing more than legal conclusions, because such testimony is not helpful to the jury. Barile, 286 F.3d at 760(quoting Woods v. Lecureux, 110 F.3d 1215, 1220 (6th Cir. 1997)("testimony offering nothing more than a legal conclusion — i.e., testimony that does little more

8

than tell the jury what result to reach — is properly excluded
under the Rules."), <u>McIver</u>, 470 F.3d 561-562 (distinguishing
between "questions of fact . . . which are the proper subject of
opinion testimony" and "opinion testimony that states a legal
standard or draws a legal conclusion.").  As stated in <u>Barile</u>:

> The role of the district court . . . is to distinguish
> opinion testimony that embraces an ultimate issue of
> fact from opinion testimony that states a legal
> conclusion.
>
>                       * * *
>
> The best way to determine whether opinion testimony
> contains legal conclusions, 'is to determine whether the
> terms used by the witness have a separate, distinct and
> specialized meaning in the law different from that
> present in the vernacular.'

<u>Barile</u>, 286 F.3d at 760 (quoting <u>Torres v. County of Oakland</u>,
758 F.2d 147, 151 (6th Cir. 1985)).

      This distinction was addressed in the excessive
force case of <u>United States v. Perkins</u>, 470 F.3d 150 (4th Cir.
2006).  There the court found admissible the objected-to
testimony of the government's "use of force" expert that he saw
no "legitimate" law enforcement reason for the defendant officer
to kick a prone suspect.  <u>Id.</u> at 154, 160.  The court concluded
that this assessment by the expert did not amount to an
inadmissible legal conclusion that the defendant's actions were
"objectively unreasonable."  <u>Id.</u>

9

There is still other precedent, both from our Court of Appeals and sister circuits, demonstrating that expert testimony, properly tailored, is admissible in cases involving the allegation that a police officer used excessive force. <u>See United States v. Mohr</u>, 318 F.3d 613 (4th Cir. 2003), <u>Kopf</u>, 993 F.2d 374, <u>see also</u> <u>Cacciola v. McFall</u>, 561 F. App'x 535, 538 (7th Cir. 2014), <u>Jennings v. Jones</u>, 499 F.3d 2 (1st Cir. 2007), <u>Champion v. Outlook Nashville, Inc.</u>, 380 F.3d 893 (6th Cir. 2004), <u>Samples v. City of Atlanta</u>, 916 F.2d 1548 (11th Cir. 1990), <u>Kladis v. Brezek</u>, 823 F.2d 1014 (7th Cir. 1987).  Whether or not such testimony is admissible in any particular case is dependent upon its facts.  As our Court of Appeals explained in <u>Kopf</u>:

> [A] blanket rule that expert testimony is generally admissible in excessive force cases would be just as wrong as a blanket rule that it is not. The facts of every case will determine whether expert testimony would assist the jury.

<u>Kopf</u>, 993 F.2d 374, 378-79.

The defendants place particular reliance on the unpublished per curiam decision in Clem v. Corbeau, 98 Fed. Appx. 197, 2004 WL 906503 (4th Cir. 2004).[3] Clem is an excessive force case involving use by a police officer of a firearm to subdue a mentally ill defendant – who was charging the officer in a narrow hallway – by shooting but not killing him. The court there noted that the use of excessive force is judged by a standard of objective reasonableness. The court then undertook to apply the decision in Kopf, wherein it had held that the trial court should have admitted an expert's specialized knowledge of an "obscure skill" consisting of the use of police dogs and a slapjack. In Clem the court affirmed exclusion of the proffered expert testimony for the reason that the experts did not offer expert testimony providing specialized knowledge

---

[3]The court notes that Clem is a pre-January 1, 2007, decision. The use to be made of such decisions is governed by Fourth Cir. Loc. R. App. P. 32.1 which provides:

> Citation of this Court's unpublished dispositions issued prior to January 1, 2007, in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.

> If a party believes, nevertheless that an unpublished disposition of this Court issued prior to January 1, 2007, has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if the requirements of FRAP 32.1(b) are met.

on the obscure skill in that case, which was the use of the gun. The court simply found that the expert opinion offered would not have assisted the jury. It added that the admission of that testimony would have risked supplanting the jury's role of determining the facts. Since then, our Court of Appeals, as noted, had occasion to conclude, in Perkins, that a use of force expert's testimony that there was no "legitimate" law enforcement reason for an officer to kick a prone suspect was, under the facts of that case, admissible.

Kopf, however, may be of particular application in one respect here. Weigle's complaint includes the allegation that a specialized police tool – a taser – was employed by the defendants during his arrest. See Pl. Compl. ¶ 21. Testimony about the capabilities of a taser, the training police receive with respect to such devices, and the general guidelines for their use would likely be informative and helpful to the jury.

Gaut's training, education and experience seem to have provided him with the requisite specialized knowledge to be qualified as an expert on police procedures and training techniques, including those related to the use of force. To the extent he offers opinions that flow from that specialized knowledge, and his testimony is within the parameters set forth in this opinion – that is, his testimony does not consist solely

of bald legal conclusions or do nothing more than apply legal
standards to the facts of the case – his testimony may very well
be considered helpful to the jury.

Even if the defendants satisfy the court that the
facts in this case are not conducive to expert testimony
concerning the reasonableness of the force, other portions of
Gaut's testimony may still be helpful.  Expert testimony has
been held to be a critical component of a failure to train
claim.  See e.g., Russo v. City of Cincinnati, 953 F.2d 1036,
1047 (6th Cir. 1992)("[I]n the context of a failure to train
claim, expert testimony may prove the sole avenue available to
plaintiffs to call into question the adequacy of a
municipality's training procedures. To disregard expert
testimony in such cases would, we believe, carry with it the
danger of effectively insulating a municipality from liability
for injuries resulting directly from its indifference to the
rights of citizens. Reliance on expert testimony is particularly
appropriate [in such situations]."), see also Kopf, 993 F.2d at
378 (Noting that "the inadmissibility of [an] expert's ultimate
opinion does not necessarily banish him from the stand
altogether, because his specialized knowledge may still assist
the trier of fact in other ways.").

Applying the various precedents to the four opinions

13

set forth in Gaut's expert report, the court concludes that
opinions two and four, which concern the reasonableness of the
force used by the defendants, and the Vienna police department's
failure to train its officers, involve areas where Gaut's
specialized knowledge is apt to be helpful to the jury, and
therefore his testimony, offered in a manner consistent with the
guidelines set forth in this opinion, may be admissible.  The
court also concludes that the first and third opinions,
consisting of Gaut's determination that Weigle was falsely
arrested and that Pifer engaged in witness intimidation, appear
to be mere legal conclusions that usurp the court's proper role
as expositor of the law and unhelpfully intrude upon the jury's
role as finder of fact.  It is the court's duty to explain to
the jurors the law concerning the legality of an arrest and its
contours related to witness intimidation.  The facts underlying
those claims are ordinarily straightforward and, in most cases,
well within the capacity of the jury to fully comprehend without
the aid of an expert witnesses' specialized knowledge or
opinion.  Accordingly, the court holds that Gaut is permitted to
testify with respect to the second and fourth opinions in his
expert report, and, absent further justification for the
necessity of expert testimony, precluded from testifying about
the first and third opinions contained therein.

14

## Conclusion and Order

For the foregoing reasons, and as discussed above, the defendants' motion to exclude the expert opinion testimony of William T. Gaut is granted in part and denied in part.  The court reserves the right to rule on the admissibility of specific opinions when offered at trial, and to exclude or strike any testimony that contains inadmissible legal conclusions, or questions that invite such testimony.

The court further concludes that, in light of this ruling, the defendants have shown good cause for their motion in the alternate seeking additional time to make the required disclosures of its rebuttal expert.  Accordingly, that motion is granted.  The court shall set forth the necessary modifications to the schedule of the case in a forthcoming order.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

ENTER:  April 30, 2015

John T. Copenhaver, Jr.
United States District Judge

15