IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

AT PARKERSBURG

JAMES P. WEIGLE,

     Plaintiff,

v.                                     Civil Action No. 2:14-cv-15087
                              (The Honorable John T. Copenhaver, Jr., Judge)

R. L. PIFER, et. al.

     Defendants.


**DEFENDANTS R.L. PIFER, BRIAN INGRAHAM, CITY OF VIENNA POLICE
DEPARTMENT AND CITY OF VIENNA'S REPLY TO PLAINTIFF'S RESPONSE TO
THEIR MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL BRIEF IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, R.L. Pifer, Brian Ingraham, City of Vienna Police

Department and City of Vienna, by counsel, Cy A. Hill, Jr., and MANNION, GRAY, UHL &

HILL CO., L.P.A., and hereby submit the following reply to Plaintiff's response to their Motion

for Summary Judgment. This brief will also serve to supplement the Defendant's prior brief to

include the recent opinions of Defendants' law enforcement expert, Sam Faulkner, as well as

information revealed at the deposition of Chief Young.

     I.     **The Plaintiff's version of the facts is insufficient to create a genuine issue of
material fact for trial, and thus, summary judgment is appropriate.**

     The Plaintiff attempts to demonstrate that genuine issues of material fact exist, and thus,

summary judgment is not appropriate. Although the Plaintiff cites to various factual disparities in

the record, none of them create a "genuine issue of material fact" for trial under the theories

alleged.

The Plaintiff claims that he only honked his horn one time and is thus baffled why the police would even approach him. However, according to Patrolman Cole, the Plaintiff admitted to honking his horn and when asked if he was going to stop honking his horn he replied that he was not going to do so. *Deposition of Joshua Cole,* pgs. 24-30. **("Exhibit 1")**. Furthermore, when Cole and Pifer investigated who was incessantly honking their horn, multiple drivers motioned toward the Plaintiff's vehicle. *Id.* at 25-26; *Deposition of Robert Pifer*, pgs. 52-53 **("Exhibit 2")**. Thus, the officers were not singling the Plaintiff out, but responding to cues from other drivers that the Plaintiff was the one repeatedly honking his horn. The fact that the Plaintiff denies repeatedly honking his horn is immaterial to the extent that the officers were acting upon objective information from multiple independent witnesses that the Plaintiff was the one causing the disturbance. There was more than ample information to establish probable cause that a violation of the Code had occurred.

The Plaintiff's contention that he was uncooperative with Patrolman Cole and Sgt. Pifer because he did not know that they were police officers is absurd. Independent witnesses have testified that it was obvious that they were police officers. *See criminal trial testimony of Shawn Barr,* pg. 113 *and Kerry Miler*, pg. 134; **("Exhibit 3")**. Although there may have been firemen assisting with traffic control, the Plaintiff did not testify that he thought Cole and Pifer were firemen instead of a police officers. Common sense would suggest to a driver that a person who is directing traffic, approaches his vehicle in a long black raincoat and hat, and who orders him to pull his vehicle over is obviously a police officer. The Plaintiffs testimony that he only honked his horn once and that he did not know that Cole and Pifer were police officers is disingenuous at best.

The Plaintiff claims that he informed Sgt. Pifer that he had to get out of his vehicle to get his license out of his wallet. The discovery record confirms that Pifer did not ask Weigle to exit his vehicle. Independent witness, Chuck Noffsinger, testified that he heard Sgt. Pifer tell Weigle, "Hey, I didn't tell you to get out of the car." *See criminal trial testimony of Chuck Noffsinger*, pg. 95; **("Exhibit 4")**. From the perspective of an objective reasonable officer, a driver who exits his vehicle during a traffic stop without permission to do is a potential safety issue or, at minimum, a sign of an escalating hostile situation. Regardless of the Plaintiff's reasons for exiting his vehicle (and subsequently attempting to re-gain access to his vehicle), any reasonable police officer is going to consider this behavior in determining how to handle the situation.

The Plaintiff claims that he "repeatedly complained" that he had abdominal surgery and was in terrible pain due to the force that Sgt. Pifer was applying as he attempted to restrain him against the vehicle. The Plaintiff does not deny that he had his hands underneath his body while Pifer restrained him against the police vehicle. The only reason why Pifer restrained the Plaintiff in the first place was in order to place handcuffs on him. If the Plaintiff had complied, there would be no reason for Pifer to restrain him. The Plaintiff's discomfort was caused by his own failure to follow the officers' repeated commands to place his hands behind his back. This statement is corroborated by the fact that as soon as he placed his hands behind his back, he was removed from the hood of the car. Although the Plaintiff did tell Pifer that he was in pain due to his prior surgery, there was no way for Sgt. Pifer to know that was true. An arrestee could say anything to avoid an arrest. From the officers' perspective, the Plaintiff could just as easily have been concealing a weapon. *Deposition of Brian Ingraham*, pg. 73; **("Exhibit 5")** and *Deposition of Robert Pifer*, pgs. 81-82.

The Plaintiff absurdly contends that he did not know that he was under arrest and was never told to place his hands behind his back. Both officers testified that they repeatedly instructed him to place his hands behind his back and also physically attempted to pull his hands from beneath his body to place them behind his back. *Deposition of Brian Ingraham*, pgs. 47-48. The Plaintiff admits that Sgt. Ingraham displayed pepper spray at one point in order to gain the Plaintiff's compliance. *Deposition of James P. Weigle*, pgs. 42-43; **("Exhibit 6")**. The Plaintiff's contention that the officers did not tell him that he was under arrest or that he place his hands behind his back is nothing more than self-serving testimony, completely inconsistent with the discovery record, and cannot be relied upon to create a genuine issue of material fact for trial.

The Plaintiff continues to maintain that he was subjected to a Taser although there is no credible evidence that a Taser was used. Under the factual circumstances, the Defendants' expert, Samuel Faulkner, opines that the use of a Taser would have been appropriate pursuant to well-accepted law enforcement training. *See Report of Samuel D. Faulker*; **("Exhibit 7")**. Regardless, the only "evidence" that a Taser was used is that the Plaintiff had bruises on his left side and defecated himself during the arrest. If a Taser was used on the Plaintiff, there would be no debate as it is an extremely unpleasant experience. Furthermore, as Samuel Faulkner notes:

> Had a Taser been used in the probe mode, there would have been an expired Taser cartridge with twenty-one feet of wires easily visible to everyone. The wounds that a Taser leaves are minor burns and not a bruise. Tasers are carried with the cartridges attached. If a Taser is going to be used with a drive stun technique, the officer must physically use one hand to hold the Taser, while removing the cartridge with the other hand. Both Sgt. Pifer and Sgt. Ingraham had their hands committed when they were attempting to control Mr. Weigle. It is my opinion that although the use of a Taser in this situation would have complied with the officers' training; neither Sgt. Pifer nor Sgt. Ingraham used a Taser to control Mr. Weigle.

*Id*. at pg. 24.

Additionally, neither officer had a Taser on him at the time of this arrest. At that time, the department only had three Tasers. *Deposition of Robert Pifer*; pgs. 107-108. Presently, each Vienna officer has his own Taser. The Plaintiff points out that the City no longer has the sign out log for the Tasers. Of course, after each officer received his own Taser, there would have been no reason to maintain the log. Regardless, the Department still maintains Use of Force Reports which would include occasions when officers use a Taser on a suspect. Thus, there the Department does have a documentary record of occasions when officers utilize their Taser.

The Plaintiff incorrectly states that it is a custom and practice of the Vienna Police Department not to document complaints against officers. Chief George Young did not testify that it is a custom and practice of the Department not to document complaints. The truth of the matter is that the City receives very few complaints against its officers. Naturally, Chief Young acknowledged occasional telephone complaints from citizens that an officer was rude at a traffic stop and various complaints to that effect. In such cases, the Chief routinely asks the complainant if they want to file a formal written complaint, which they rarely do. *Deposition of George Young*, pgs. 21-26; **("Exhibit 8")**. He inquires of the citizen what they want him to do and in essentially all cases the citizen is satisfied that they were able to vent to him about the situation. *Id*. In such cases, the Chief routinely speaks with the officer about the telephone complaint and asks the officer to pull their vehicle's video footage to investigate whether the citizen's report is meritorious. *Id*.

In any case where a citizen makes a complaint that may involve a criminal act by an officer, the matter is submitted to a Sergeant for an internal investigation. *Id*. In those cases, the matter is documented. Also, if an officer commits an act serious enough to warrant a note to their personnel

file, the matter is documented to their file.[1]  Regardless of whether each telephone complaint is documented, Chief Young testified that he addresses every single complaint made by a citizen.  *Id.*

Given that the Vienna Police Department employees fewer than 20 police officers, it is hardly surprising that the Department does not document even the most minor telephone "complaints."  Given the small size of the Department, any negative trends by an officer would be easily spotted. Of course, any citizen could contest a criminal charge in court if they felt it was unwarranted or they could file a civil suit if the officer acted unlawfully toward them.

The City of Vienna Police Department's outstanding record speaks for itself. The Vienna Police Department has not been the subject of a civil suit involving alleged constitutional violations in approximately 30 years.  *Deposition of George Young*, pgs. 35-36.   None of the officers involved in this case have any record of formal complaints of excessive use of force against a citizen.  *Id.* at 98.  Patrolman Cole, Sgt. Pifer, Sgt. Ingraham, and Chief Young gave deposition testimony in this case for the first time in their respective law enforcement careers.  Neither Pifer, Ingraham, nor Young have ever been sued in their approximately twenty years, or more, on the force. Chief Young testified that the Department probably only completes approximately three Use of Force Reports a year as the occasions to use force in their jurisdiction are so few and far between. *Id.* at 40-41.

The Defendants acknowledged in their motion the one formal complaint lodged against Sgt. Pifer based upon his off-duty verbal confrontation with a former friend who was having an affair with his wife.  The State Police investigated that matter with the full cooperation of Sgt. Pifer and the Vienna Police Department.  No charges were filed against Pifer.  Despite the fact that no charges were filed and this was an off-duty incident, Chief Young still suspended Sgt. Pifer for

---

[1] For example, Chief Young wrote an officer up for accidentally discharging his weapon at the firing range.

6

a week without pay for "conduct unbecoming an officer." This complaint and disciplinary action was documented and placed in Pifer's personnel file. Chief Young's actions are strong evidence that he takes formal complaints against his officers very seriously and that the City is not negligent in the supervision of its officers or deliberately indifferent to the constitutional rights of its citizens.

## II.    Officers Pifer and Ingraham are entitled to statutory immunity from Plaintiff's negligence claims (Count One).

The Plaintiff alleges that Officers Pifer and Ingraham were negligent in injuring him in the course of the arrest while acting within the scope of their employment with the City. West Virginia Code § 29-12A-5(b) provides that employees of political subdivisions are immune from personal tort liability unless (1) his or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) his or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) liability is expressly imposed upon the employee by a provision of this code.

The Plaintiff contends that genuine issues of material fact preclude an award of statutory immunity as evidence exists that the officers acted in bad faith and in a reckless disregard for both his well-being and his Fourth Amendment rights. However, the Defendant officers seek statutory immunity from Plaintiff's state law negligence claim. Concededly, the individual immunity provided by West Virginia Code § 29-12A-5(b) does not apply to the Plaintiff's Fourth Amendment claim – although the doctrine of qualified immunity would apply to the Fourth Amendment claim.

The Plaintiff has not presented any evidence that the officers' actions were performed with a malicious purpose, in bad faith, or in a wanton or reckless manner. Officer Pifer initiated a traffic stop to investigate incessant horn honking during a 5K race in violation of a city ordinance and West Virginia Code. Officer Pifer is permitted by law to investigate such a traffic violation

7

whether the Plaintiff admits to honking is horn once or more than once – that factual dispute is immaterial. Multiple drivers directed the officers toward the Plaintiff's vehicle. Pifer asked for the Plaintiff's license, registration, and proof of insurance which is standard procedure. The Plaintiff produced his license, but did not produce his registration or proof insurance before announcing that he was leaving the traffic stop.

The Plaintiff claims that he told the officers that they were hurting his abdomen. Sgt. Pifer stated that he would remove the Plaintiff from the hood once he complied with their orders to place his hands behind his back. It was not until Sgt. Ingraham displayed pepper spray that the Plaintiff complied with the officers' orders to place his hands behind his back. Independent witness testimony confirms that the Plaintiff was "combative," but the officers were "professional" in their handling of the situation.

The officers' actions fall well short of malicious, bad faith, wanton, or reckless conduct and these facts are not legally sufficient to remove the officers' entitlement to statutory immunity pursuant to West Virginia Code § 29-12A-5(b). Even independent witnesses have testified that the officers were "professional" in their handling of the situation. Thus, the officers are entitled to statutory immunity from the Plaintiff's negligence claim.

**III.** **The City of Vienna is entitled to summary judgment as a matter of law as to Plaintiff's negligent retention claim (Count Two) as the Plaintiff has failed to show any genuine issue of material fact as to this claim and discovery is now closed.**

The Plaintiff claims that additional discovery is needed to respond to the Defendants' motion as to the negligent retention claim. However, discovery is now closed and the parties are just over a month away from trial. The Plaintiff has deposed all officers who were involved in this case as well as the designated City representative, Chief Young.

As previously noted, the Plaintiff's negligent retention claim against the City has no merit as he has failed to prove that Sgt. Pifer acted unlawfully in the first place. As the Plaintiff has not proven that Pifer acted unlawfully, his negligent retention claim necessarily fails.

Furthermore, the Plaintiff has failed to present any credible evidence that the City had notice that Sgt. Pifer was an unfit employee such that it should have foreseen that he would injure third-parties such as the Plaintiff. Sgt. Pifer has only been formally disciplined one time in his approximately 20 years on the force. No citizen has ever filed an excessive use of force complaint against him and he had never been sued for excessive use of force until this case after nearly 20 years with the Vienna Police Department. Sgt. Pifer has received numerous performance evaluations none of which detail any significant issues or propensity to use excessive force.

The only other citizen complaints against Sgt. Pifer have been the typical "he was rude to me at a traffic stop" type complaint which have usually resulted in a superior informally admonishing him to conduct himself in a professional manner during traffic stops. *See Deposition of Robert Pifer,* pg. 19-22. A citizen also once complained that he took cigarettes from her 13-year-old son. *Id.* These facts are insufficient to prove a negligent retention claim against the City and summary judgment is appropriate as to Count Two.

**IV.     Officers Pifer and Ingraham are entitled to summary judgment as a matter of law as to Plaintiff's intentional and negligent infliction of emotional distress claims (Counts Three and Four) as the Plaintiff has failed to present sufficient facts meet the high standard of proof required by these causes of action.**

The Plaintiff claims that the actions of Pifer and Ingraham during the arrest process and Pifer's conduct in following him to his home were sufficiently outrageous to support a claim for intentional and negligent infliction of emotional distress. The Defendants contend that they are immune from liability. Alternatively, the conduct of the officers falls well short of the high standard of proof required to prove such claims.

The Plaintiff's actions of refusing to pull over per instructions from Officer Cole, failure to produce his registration and proof of insurance to Sgt. Pifer, exiting the vehicle without being asked to do so, attempting to re-gain access to his vehicle and leave the traffic stop, and refusing to place his hands behind his back strongly suggest that the Plaintiff was uncooperative and did not fear for his safety as the result of any actions of the officers.

The fact that the Plaintiff complained of pain during an arrest does not warrant a police officer deviating from his law enforcement training. As the Defendant's expert opines, the officers acted consistently with their training and the research behind that training in their handling of this situation. Although the Plaintiff alleges that he was in pain while placed over the hood of the vehicle, the discovery records confirms that he was uncooperative and combative thereby extending the time that he was over the hood of the vehicle. The Plaintiff controlled his own destiny in that regard. As the Plaintiff has failed to meet the high burden of proof for an intentional or negligent infliction of emotional distress claim, summary judgment is appropriate as to Counts Three and Four.

**V.     Officers Pifer and Ingraham are entitled to summary judgment as to Plaintiff's assault and battery claims (Counts Five and Six) as the officers were privileged as a matter of law to use reasonable force to arrest the Plaintiff.**

The Defendants have nothing further to add to this section and incorporate by reference the arguments in their previously filed memorandum of law.

**VI.     Officers Pifer and Ingraham are entitled to summary judgment as to Plaintiff's malicious prosecution claim (Count Seven) as the magistrate found probable cause for the obstructing charge and the Plaintiff was convicted of obstructing a police officer in magistrate court.**

The Defendants incorporate by reference the arguments in their previously filed memorandum of law and further state that the evidence establishes that Sgt. Pifer did not control the prosecution of this case. The mere fact that that the Plaintiff and Sgt. Pifer disagree over certain

facts does not mean that the Plaintiff's prosecution was malicious. Furthermore, even after all parties, including the Plaintiff, testified in magistrate court as to the details of this incident, the Wood County Prosecuting Attorney's office continued to prosecute the case through appeal. The prosecuting attorney's office had full authority to pursue or not pursue charges against the Plaintiff or dismiss the case on appeal. The prosecutor chose to prosecute. Accordingly, the element of procurement is absent from this case as to Sgt. Pifer. As such, summary judgment is appropriate as to Plaintiff's malicious prosecution claim (Count Seven).

**VII.    Officers Pifer and Ingraham are entitled to summary judgment as to Plaintiff's Fourth Amendment (Count Eight) claim as the level of force used during the arrest of the Plaintiff was objectively reasonable under the circumstances.**

The Defendants incorporate by reference the arguments in their previously filed memorandum of law. Further, the Defendants reiterate that, in the eyes of an objectively reasonable officer under the totality of the circumstances, the Plaintiff may have presented a safety threat to Sgt. Pifer and numerous runners and walkers who were participating in the 5K race. Regardless of the Plaintiff's intentions in seeking to re-gain access to his vehicle, Sgt. Pifer did not know what his true intentions were. It is highly relevant, and not disputed, that the Plaintiff was in an extremely agitated state and had a loaded firearm next to the driver's seat of his vehicle – a fact not properly disclosed to Sgt. Pifer during the traffic stop, but one of the many reasons why officers act as Pifer did when a person seeks to re-gain access to their vehicle during a traffic stop.

Additionally, the Plaintiff could have posed a danger to the oncoming walkers and runners who were participating in the race if he re-gained access to his vehicle and took off. The safety of the participants in the race was the whole reason the officers were directing traffic in the first place.

If the Plaintiff was to take off without permission in an irate state of mind, the safety of these individuals could certainly be at risk.

The Plaintiff states that Sgt. Ingraham does not support Sgt. Pifer's testimony that the Plaintiff struck him with his shoulder as he attempted to re-gain access to his vehicle. To be fair, Sgt. Ingraham did not necessarily witness all interactions between Pifer and Weigle. After Plaintiff's first attempt to re-gain access to his vehicle, Sgt. Pifer shut the door to his vehicle and motioned for Sgt. Ingraham to assist. *Deposition of Robert Pifer*, pgs. 69-73. At that point, Ingraham was focused on navigating around parking cones into the parking lane where Plaintiff's vehicle was parked. *Deposition of Brian Ingraham*, pg. 43. Pifer testified that the Plaintiff made a second attempt to re-gain access to his vehicle after he had motioned for Ingraham to come assist and that is when the Plaintiff struck Pifer with his shoulder. *Deposition of Robert Pifer*, pgs. 69-73. Immediately after pulling in behind Plaintiff's vehicle, Sgt. Ingraham saw Sgt. Pifer escorting the Plaintiff back to his vehicle. *Deposition of Brian Ingraham*, pg. 43. Thus, it is reasonable to infer that Ingraham did not necessarily witness the Plaintiff's second attempt to re-gain access to his vehicle by striking Pifer with his shoulder as he was navigating his vehicle around parking cones into the parking lane where the Plaintiff was parked.

The Plaintiff makes much of the fact that Sgt. Pifer is younger and larger than he is. That is not necessarily a legitimate factor for an officer to consider in effectuating an arrest. Any person can pose a threat to an officer's safety regardless of their size or age. The Plaintiff had a loaded gun in his vehicle that could have posed a serious threat to Sgt. Pifer's safety which is one reason why officers are trained not to allow individuals to re-gain access to their vehicles during a traffic stop. The Plaintiff also admits that he had his hands under his body as he was placed over the hood of the police vehicle. Again, regardless of his true intentions, this is a huge red flag to any

police officer. Regardless of the Plaintiff's size and age, he could have posed a serious threat to the officers and the race participants but for the actions of the officers in using an appropriate level of force and arresting him for obstructing.

Also, since the Defendant's filed their motion, their expert, Samuel Faulkner, produced his report in this matter. Mr. Faulkner is a nationally recognized expert in the field of law enforcement. He opines as follows:

1. Sgt. Pifer had probable cause to believe that Mr. Weigle had violated West Virginia Code 17C-15-3 – Horns and Warning Devices.

2. Sgt. Pifer had probable cause to believe that Mr. Weigle had violated West Virginia Code 61-5-17 – Obstructing Officer.

3. The responses of Sgt. Pifer and Sgt. Ingraham in relation to the resistive actions of Mr. Weigle complied with the officers' training and the research on which that training was based.

4. The control options used by Sgt. Pifer and Sgt. Ingraham offered the greatest propensity of establishing control along with the lowest propensity of causing injury.

5. Although the use of a Taser in this situation would have complied with the officers' training, neither Sgt. Pifer nor Sgt. Ingraham used a Taser to control Mr. Weigle.

6. Sgt. Pifer and Sgt. Ingraham de-escalated appropriately once Mr. Weigle was under control.

7. Mr. Weigle's treatment following his arrest complied with national law enforcement training and operational guidelines.

8. The Vienna Police Department supervisory follow-up to this incident complied with national operational guidelines and the Vienna Police Officers' training meets or exceeds the requirements for the State of West Virginia.

*See Report of Samuel D. Faulker; (**"Exhibit 7"**).*

For the reasons stated herein and in the Defendants' previously filed memorandum of law, summary judgment is appropriate as to Plaintiff's Fourth Amendment claim (Count Eight).

**VIII.   Officers Pifer and Ingraham are entitled to summary judgment as to Plaintiff's Fourteenth Amendment claim (Count Nine) as the Plaintiff does not contest the Defendants' motion on this Count.**

The Plaintiff voluntarily withdrew his Fourteenth Amendment claim.

**IX.     The City of Vienna is entitled to summary judgment as to Plaintiff's Monell claim as the Plaintiff failed to present sufficient factual evidence of an official custom or policy of the City that caused a deprivation of his constitutional rights and discovery in this case is now closed.**

The Plaintiff claims that additional discovery is needed to respond to the Defendants' motion as to the Plaintiff's Monell claim. However, discovery is now closed and the parties are just over a month away from trial. The Plaintiff has deposed all officers who were involved in this case as well as the designated City representative, Chief Young.

As previously noted, the Plaintiff's Monell claim against the City has no merit as he has failed to prove that Sgt. Pifer acted unlawfully in the first place. As the Plaintiff has not proven that Pifer acted unlawfully, his Monell claim necessarily fails.

Furthermore, the Plaintiff has failed to present sufficient evidence of any custom or policy of the City that caused his alleged injuries and damages. Neither officer has ever been investigated or disciplined for excessive use of force in their respective 20 years on the force. Sgt. Pifer has been investigated for alleged off-duty misconduct, but no charges have ever been filed against him. Chief of Police, George Young, suspended Pifer once for "conduct unbecoming an officer" based upon the Lawrence Darling matter as discussed in the Defendant's previously filed memorandum of law despite the fact that the State Police investigation revealed no criminal conduct. Chief Young's decision shows that the City does not tolerate inappropriate conduct by its officers even when such conduct did not result in criminal or unconstitutional behavior. Sgt. Ingraham has never faced a formal complaint or disciplinary action at all. Neither officer has faced a civil suit as a police officer until this case and were deposed for the first time in their careers in this case.

14

The Vienna Police Department's superior record further shows that the Plaintiff's claim against the City lacks merit. There have been no formal complaints of excessive use of force against a Vienna police officer in nearly 30 years. None of the officers involved in this case have any record of formal complaints of excessive use of force against a citizen. Neither Pifer, Ingraham, nor Chief Young have ever been sued in their approximately twenty years, or more, on the force. Upon information and belief, the Vienna Police Department has not been the subject of a civil suit in approximately 30 years. The Vienna Police Department's record clearly demonstrates that the City has not acted with deliberate indifference to the rights of its citizens and there is obviously no widespread department problem with excessive use of force complaints so as to rise to the level of custom and policy as referenced in Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003). Accordingly, summary judgment is appropriate as to Plaintiff's Monell claim against the City (Count Ten).

### X.     Officers Pifer and Ingraham are entitled to qualified immunity.

The Defendants have nothing further to add to this section and incorporate by reference the arguments in their previously filed memorandum of law.

### XI.     The Vienna Police Department is not a properly named party as it is not a separate political body from the City of Vienna.

The Plaintiff does not contest this argument, and thus, the Vienna Police Department should be dismissed as a party from this suit.

**WHEREFORE**, for the reasons articulated hereinabove and in the Defendants' previously filed memorandum of law, the Defendants respectfully move this Honorable Court to enter summary judgment in their favor as to each Count contained in Plaintiff's Complaint and any other relief deemed appropriate by the Court.

**R. L. PIFER, BRIAN INGRAHAM,
CITY OF VIENNA POLICE DEPARTMENT,
and CITY OF VIENNA**

**By Counsel**

 */s/ Cy A. Hill, Jr.*

**Cy A. Hill, Jr. (WVSB ID NO. 8816)
MANNION, GRAY, UHL & HILL CO., L.P.A.
707 Virginia Street East Suite 260
Charleston WV 25301
304-513-4242
304-513-4243 (fax)
chill@manniongray.com**

16

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

### AT PARKERSBURG

JAMES P. WEIGLE,

      **Plaintiff,**

v.                                            **Civil Action No. 2:14-cv-15087**
                                       **(The Honorable John T. Copenhaver, Jr., Judge)**

R. L. PIFER, individually and
in his capacity as an officer with
the City of Vienna Police Department,
BRIAN INGRAHAM, individually
and in his capacity as an officer with
the City of Vienna Police Department,
CITY OF VIENNA POLICE DEPARTMENT,
a political subdivision of the State of
West Virginia, and the CITY OF VIENNA,
a political subdivision in the State of West Virginia,

      **Defendants.**

### CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June, 2015, I electronically filed the foregoing

**"DEFENDANTS R. L. PIFER, BRIAN INGRAHAM, VIENNA POLICE DEPARTMENT,**

**AND THE CITY OF VIENNA'S REPLY TO PLAINTIFF'S RESPONSE TO THEIR**

**MOTION FOR SUMMARY JUDGMENT AND SUPPLEMENTAL BRIEF IN SUPPORT**

**OF THEIR MOTION FOR SUMMARY JUDGMENT"** with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Marvin W. Masters, Esquire
Kelly Elswick-Hall, Esquire
Kimberly K. Parmer, Esquire
THE MASTERS LAW FIRM
181 Summers Street
Charleston WV 25301
mwm@themasterslawfirm.com
keh@themasterslawfirm.com
kkp@themasterslawfirm.com

Jennifer N. Taylor, Esquire
1118 Kanawha Boulevard East
Charleston WV 25301
jennifer@jtaylor-law.com


_/s/ Cy A. Hill, Jr._
**Cy A. Hill, Jr. (WVSB ID NO. 8816)**
**MANNION, GRAY, UHL & HILL CO., L.P.A.**
**707 Virginia Street East Suite 260**
**Charleston WV 25301**
**304-513-4242**
**304-513-4243 (fax)**
**chill@manniongray.com**